IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| FUNDAMENTAL SPORTS MANAGEMENT, LLC; RAHUL PATEL; GRANT GAINES; ROE-BRG INVESTMENTS, LLC; AND NICOLAS LAHOOD, PLAINTIFFS, <br><br> v. <br><br> MAYAR ZOKAEI, DEFENDANT. | CIVIL ACTION NO. 5:20-CV-00774-FB <br> (LEAD CASE) (JURY TRIAL DEMANDED) <br><br> (CONSOLIDATED WITH 5:20-CV-00775-FB) |

## FINDINGS OF FACT & CONCLUSIONS OF LAW[1]

### I. Findings of Fact

After applying the proper applicable burden of proof, whether preponderance of the evidence or by clear and convincing evidence, the Court has found the following facts:

1. Defendant Mayar Zokaei ("**Defendant**") was a player agent or representative certified by the National Basketball Players Association prior to and at the time that FSM engaged Defendant as well as at all times prior through April 20, 2020.

2. Fundamental Sports Management, LLC ("**FSM**") engaged Defendant as of February 1, 2020.

3. FSM engaged Defendant as an independent contractor.

4. Defendant was not an employee of FSM.

5. FSM engaged Defendant on an at-will basis.

6. FSM did not engage Defendant for a term.

7. Defendant did not have a contract for term with FSM.

8. FSM terminated Defendant on April 20, 2020.

9.      Defendant attended the 2020 NBA All-Star Game weekend with Colin Bryant on February 14-16, 2020 in Chicago, Illinois.

10.     During this weekend, Defendant admitted to Colin Bryant that Defendant had created numerous bogus social media accounts that posted negative, disparaging, and/or otherwise unprofessional statements and commentary regarding other sports agents, sports agencies, players, and staff.

11.     The rules applicable to NBPA agents through paragraph 14 of Prohibited Conduct Subject to Discipline in the NBPA Regulations Governing Player Agents prohibit a licensed agent from creating numerous bogus social media accounts that posted negative, disparaging, and/or otherwise unprofessional statements and commentary regarding other sports agents, sports agencies, players, and staff.

12.     Along with other independent contractors of FSM, Defendant, during the NBA All-Star weekend from February 14-16, 2020, in Chicago, Illinois, disclosed that existing Client #1 had terminated Defendant due to inappropriate behavior and representation, including but not limited to Defendant using a bogus social media account to disparage Client #1's current team as well as a prominent journalist who covered the team, plus to publish misleading information regarding Client #1. When confronted regarding these allegations, Defendant admitted to this wrongdoing and incredibly expressed only his surprise that he had been caught. In addition, it became clear that Defendant did not have the relationships with the potential clients that he had previously represented to FSM. To the contrary, an acquaintance of Defendant had those relationships, and Defendant was attempting to palm them off to FSM as his own. In yet another example of his dubious personal character, Defendant had promised tickets to an event to this acquaintance but failed to deliver these tickets as promised, and then laid out an expletive-

---

[1] Where appropriate, a finding of fact will be construed as a conclusion of law, and vice versa.

laden excuse in front of the acquaintance and his child, which further tarnished the reputation of Defendant, and through association, FSM and its principals and agents, too.

13. Even if the independent contractor agreement between FSM and Defendant were valid and enforceable, Defendant failed to comply with the alleged contract for term with FSM before FSM failed to comply with the alleged contract for term by: (1) failing to assist FSM with recruiting potential National Basketball Association ("**NBA**")/high-level overseas players for representation; (2) failing to coordinate meetings with any and all NBA teams and recruiting specials relating to the potential representation by FSM of such players; (3) failing to aid in developing specific marketing ideas for potential FSM represented clients and assist in coordinating with family and key members of players with FSM; (4) falsely claiming that he, and FSM, represented Potential Client #5 and Potential Client #6 in a player/agent capacity; (5) using bogus social media accounts to post misleading information and opinions regarding both NBA players, teams, agents, and journalists; (6) engaging in a pattern and practice of improper conduct that violated ethical rules of the profession as well as the covenants imposed upon Defendant and FSM, by the National Basketball Players Association ("**NBPA**").

14. Even if the independent contractor agreement between FSM and Defendant were valid and enforceable, FSM suffered damages as a natural, probable, and foreseeable result of Defendant's failure to comply with such alleged contract.

15. FSM sought to acquire and/or acquired services from Defendant.

16. For the purpose of inducing FSM to engage him as an independent contractor and for the purpose of inducing FSM and Rahul Patel ("**Mr. Patel**") to loan him $50,000.00, Defendant made false material representations and failed to disclose material information to FSM and Mr. Patel. During his courtship of FSM, Defendant made representations to FSM and

Mr. Patel regarding his qualifications, track record, business practices, compliance with applicable industry requirements and covenants, client and imminently pending client roster, industry and marketing relationships, and anticipated revenues streams based upon existing and imminently pending client base. Defendant informed Mr. Patel that he: (1) was on the verge of signing Potential Client #1, Potential Client #2, and Potential Client #3, in addition to his existing Client #1; (2) had a strong relationship with the owner of a major marketing firm who would actively work with FSM if and on the condition that FSM engaged Defendant as an independent contractor; and (3) already had a deal in place with existing Client #1 and Potential Client #3 (to take effect once Potential Client #3 was signed up), which he would bring to FSM upon his engagement. Defendant knew that these representations were false in that: (1) he was nowhere close to signing Potential Client #1, Potential Client #2, or Potential Client #3; (2) he did not have a strong relationship with the owner of a major marketing firm; (3) this major marketing firm had not agreed to actively work with FSM on the condition that FSM engage Defendant as an independent contractor for FSM, or otherwise, as evidenced by the fact that Defendant never introduced this major marketing firm never to FSM, whether by phone, email, text, or otherwise; and (5) he did not already have a deal in place with this marketing firm for existing Client #1, and he was not on the verge of signing Potential Client #1, Potential Client #2, or Potential Client #3. Defendant also represented the following to FSM and Mr. Patel: (1) over $4 million in agent fees from an employment contract for Client #1 over the next four years; (2) between $300,000-$600,000 in agent fees from a marketing contract for Client #1 over the next three years; (3) $55,000 in agent fees from an employment contract for Client #2 over the next two years; and (4) $25,000 in agent fees from an employment contract for Client #3 over the next two years. Defendant later made representations regarding his current client roster

(which had increased from three clients to six) as well as eight additional persons he was on the verge of being signed as a client (several of which are premier professional sports players). When Defendant made these representations, Defendant: (1) knew they were false; or (2) made them recklessly, as a positive assertion, and without knowledge of its truth. Defendant knew that these representations were false in that at least one of the persons identified as a current client was not actually his client, one of his clients was in the process of terminating him, and most if not all of the persons he represented as being on the verge of signing with him were not and had never expressed any interest in so doing. Defendant had a duty to disclose this information to FSM and Mr. Patel because Defendant: (1) discovered new information that made his earlier representations misleading or untrue; (2) created false impression by making a partial disclosure; and/or (3) voluntarily disclosed some information and therefore had a duty to disclose the whole truth. Defendant knew FSM and Mr. Patel were ignorant of the true facts and remained deliberately silent despite his duty to disclose. Defendant made these misrepresentations and failed to disclose material information with the intent that FSM and Mr. Patel act or refrain from acting upon the same, which they did. FSM and Mr. Patel actually and justifiably relied Defendant's misrepresentations and failures to disclose information in entering these transactions, which caused them damages.

17. The Court has already awarded partial summary judgment on this cause of action as it pertains to the promissory notes. The only issue remaining is the amount of attorney fees.

18. Even if the independent contractor agreement between FSM and Defendant were valid and enforceable, Defendant failed to comply with the alleged contract for term with FSM before FSM failed to comply the alleged contract for term.

19.     FSM sought to acquire and/or acquired the services of Defendant. In connection therewith, Defendant made false representations and failed to disclose information, including as summarized in connection with the fraud cause of action, which caused FSM to suffer damages in the form of money paid or reimbursed to Defendant.

20.     Defendant published and continues to publish statements of fact referring to FSM that are defamatory and false, as well as disparaging words about FSM's current business that are also false.

21.     With regard to the truth of the statement, Defendant acted with actual malice, negligence, without privilege and/or is strictly liable. Defendant's actions proximately caused injury and damages to FSM.

22.     The declaratory judgments sought are that: (1) FSM did not wrongfully terminate Defendant from FSM on or about April 20, 2020; (2) FSM did not breach the alleged employment contract with Defendant; and (3) none of Plaintiffs other than FSM could have any liability to Defendant for the alleged breach of the alleged employment contract with FSM.

23.     FSM did not wrongfully terminate Defendant from FSM on or about April 20, 2020.

24.     There was no contract for term between FSM and Defendant.

25.     There was no contract between Defendant and any Plaintiff other than FSM.

26.     Even if there were a contract between FSM and Defendant, FSM did not fail to comply with the alleged employment contract with Defendant.

27.     The amount of damages (actual, consequential, nominal, or otherwise), attorney fees, other monetary compensation, including but not limited to exemplary damages and

disgorgement/unjust enrichment and the equitable and declaratory relief to which FSM is entitled under the various causes of action is: _____.

## II. Conclusions of Law

Based on the facts found by the Court, the Court enters the following conclusions of law:

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 2201.

2. The elements of the cause of action for fraud by misrepresentation are: (1) the defendant made a material, false representation; (2) with the intent that the plaintiff rely upon the same; (3) upon which the plaintiff actually and justifiably relied; (4) which caused the plaintiff to suffer damage.

3. The elements of the cause of action for fraud by non-disclosure are: (1) the defendant had a duty to disclose; (2) the defendant failed to disclose material information; (3) with the intent that the plaintiff rely upon the same; (4) upon which the plaintiff actually and justifiably relied; (5) which caused the plaintiff to suffer damage.

4. For fraudulent inducement, there is an additional element that the plaintiff entered a contract as a result of the fraud.

5. Defendant is liable to FSM for the fraud causes of action.

6. The elements of a cause of action for breach of contract are: (1) a valid and enforceable contract between the plaintiff and defendant; (2) the plaintiff performed or was excused from performing under the contract; (3) the defendant materially breached the contract; (4) which caused the plaintiff to suffer damage as a natural and foreseeable consequence.

7. There was no contract for term between FSM and Defendant.

8. There was no contract between Defendant and any Plaintiff other than FSM.

9. Defendant never reached a contract with FSM or any of the other Plaintiffs because Defendant made a counter-offer to FSM's offer, which constitutes a rejection.

10. Even if the independent contractor agreement between FSM and Defendant were valid and enforceable, Defendant materially breached this agreement by: (1) failing to assist FSM with recruiting potential NBA/high-level overseas players for representation; (2) failing to coordinate meetings with any and all NBA teams and recruiting specials relating to the potential representation by FSM of such players; (3) failing to aid in developing specific marketing ideas for potential FSM represented clients and assist in coordinating with family and key members of players with FSM; (4) falsely claiming that he, and FSM, represented Potential Client #5 and Potential Client #6 in a player/agent capacity; (5) using bogus social media accounts to post misleading information and opinions regarding both NBA players, teams, agents, and journalists; (6) engaging in a pattern and practice of improper conduct that violated ethical rules of the profession as well as the covenants imposed upon Defendant and FSM, by the NBPA.

11. Even if the independent contractor agreement between FSM and Defendant were valid and enforceable, Defendant materially breached such alleged contract before FSM breach such alleged contract.

12. Defendant is liable to FSM for the breach of contract cause of action.

13. The elements of a cause of action for violations of the DTPA are: (1) the plaintiff was a consumer; (2) the defendant did or did not do something, which was a violation of the DTPA or otherwise constituted a false or deceptive practice; (3) that is a producing cause of damages to the plaintiff.

14. Defendant is liable to FSM for the DTPA cause of action.

15. The elements for a cause of action for breach of fiduciary duty are: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant cannot prove that the actions or omissions of the defendant were in the best interest of the plaintiff; and (3) the plaintiff suffered damages or the defendant benefitted as a result.

16. Assuming the independent contractor agreement is valid and enforceable, Defendant owed a fiduciary obligation to FSM, including but not limited to a duty of loyalty, a duty of candor, a duty to refrain from self-dealing, a duty to act with integrity of the strictest kind, and a duty of fair, honest dealing. Defendant breached his fiduciary duties to FSM, including as summarized in connection with the fraud cause of action, which caused FSM to suffer damages in the form of money paid or reimbursed to Defendant.

17. Defendant is liable to FSM for the breach of fiduciary cause of action.

18. The elements for a cause of action for defamation are: (1) the defendant published a statement of fact; (2) which referred to the plaintiff; (3) that was defamatory and false; (4) with regard to the truth of the statement, the defendant acted with actual malice or negligence, or is liable without regard to fault; and (5) that proximately caused the plaintiff to suffer damage.

19. Defendant is liable to FSM for this cause of action for defamation. FSM is entitled to judgment against Defendant for nominal damages, actual damages, consequential damages, exemplary damages, pre- and post-judgment interest, court costs, and attorneys' fees.

20. The elements for a cause of action for business disparagement are: (1) the defendant published disparaging statements; (2) which were false; (3) with malice; (4) without privilege; and (5) that proximately caused the plaintiff to suffer damage. FSM is entitled to judgment for actual damages, consequential damages, lost profits, exemplary damages, pre- and post-judgment interest, and court costs.

21. Defendant is liable to FSM and Mr. Patel for this cause of action for business disparagement. FSM is entitled to judgment against Defendant for nominal damages, actual damages, consequential damages, exemplary damages, pre- and post-judgment interest, court costs, and attorneys' fees. Mr. Patel is entitled to judgment against Defendant for nominal damages, actual damages, consequential damages, exemplary damages, pre- and post-judgment interest, court costs, and attorneys' fees.

22. All of the declaratory judgments turn upon the formation, existence, and alleged breach of the putative contract, which elements were previously identified. To prove the formation of a contract, a party must prove: (1) an offer; (2) that was accepted in strict compliance with the terms of the offer; (3) the parties had a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding.

23. Defendant failed to prove the existence of the necessary elements of the formation of a contract. Therefore, Defendant shall take nothing on Defendant's cause of action for breach of contract.

24. In the alternative, Plaintiffs have proven by a preponderance of evidence each of elements required for the declaratory judgments.

25. Plaintiffs are entitled to such declaratory judgments, together with other and supplemental relief as well as attorney fees, costs, and interest.

26. Plaintiffs are also entitled to recover attorney fees, costs, and post-judgment interest from Defendant.

27. Defendant is liable to Plaintiffs as set forth herein, and a judgment should be rendered and signed in favor of Plaintiffs in accordance with these findings of fact and conclusions of law.

RENDERED and SIGNED this _____ day of _____, 2022.

_____
RICHARD B. FARRER, UNITED STATES MAGISTRATE JUDGE

**CERTIFICATE OF SERVICE**

I certify that the date this document was filed with the Clerk of the Court, a true and correct copy was transmitted in accordance with the requirements of the Federal Rules of Civil Procedure, addressed as follows:

*<u>Via ECF Service</u>*:
Husein Hadi

 */s/ Lance H. "Luke" Beshara*
Lance H. "Luke" Beshara